IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-00266-REB-BNB

GLENN DAVIS,

Plaintiff,

v.

ARISTEDES ZAVARAS, Director CDOC,
COLORADO DEPARTMENT OF CORRECTIONS,
JIM MOORE, Offender Services,
LT. PIPER, DOC Employee, Limon, CO,
MAJOR WILLIAM BRUNELL, Limon, CO,
JAMES LANDER, CDOC Mental Health Employee, Canon City, CO, and
BURL MCCULLAR, SOTMP Program Manager, CDOC Mental Health Employee, Canon City, CO,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on **Defendants' Motion to Dismiss and Memorandum Brief in Support of Motion to Dismiss** [Doc. #19, filed 06/01/2009] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART.

### I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

In ruling on a motion to dismiss under Rule 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II.  BACKGROUND

The plaintiff is currently incarcerated by the Colorado Department of Corrections ("DOC").  He filed his Amended Prisoner Complaint on February 23, 2009 [Doc. #6] (the "Complaint").  The Complaint contains the following allegations:

1.  The plaintiff is a convicted sex offender.  *Complaint*, pp. 6, 6b.[1]  He was sentenced to three indeterminate sentences of 20 years to life.  Under Colorado law, he is required to undergo "appropriate treatment."  In order to be eligible for release on parole, the plaintiff must participate in a sex offender treatment program.  Id. at p. 6b.

2.  Within the first few months of the plaintiff's incarceration, the Mental Health Department informed him that, as a part of his rehabilitation, he would be subject to additional restrictions on his reading materials.  Id. at p. 4.  On January 2, 2005, the plaintiff was transferred to Fremont Correctional Facility where the treatment program is available.  In April 2008, he was transferred to Limon Correctional Facility where no treatment is available.  In November 2008, he was transferred to the Buena Vista Correctional Facility where no treatment is available.  Id. at p. 6b.  The plaintiff has not received any rehabilitation.  Id. at p. 4.

3.  The plaintiff had a subscription to Playboy Magazine and other reading materials that were previously sent to him without incident.  James Lander, the head of the Mental Health Department, and Burl McCullar, the Program Manager of the DOC's Sex Offender Treatment and Monitoring Program ("SOTMP"), ordered the mailroom to deny the plaintiff's subscriptions

---

[1]I cite to the page numbers of the Complaint as assigned by the plaintiff.

to Playboy Magazine and Maxim Magazine; books titled Real Girls, Fresh Girls, and Clean Cartoonists' Dirty Drawings; and catalogs from NBM Books, The Picture Pimp, and others. The plaintiff had to pay to have the materials sent out of the facility or the materials would be destroyed. Id.

4. The materials do not violate security restrictions or standard DOC policy. Id.

5. In April 2008, the plaintiff was transferred from Fremont Correctional Facility to Limon Correctional Facility by order of Aristedes Zavarazs. He was placed in Cellhouse 1, Pod B. White supremacist inmates "who knew of his case" approached the plaintiff and demanded that he pay rent to live in the facility without trouble. The plaintiff refused to pay the rent, and he was assaulted and robbed. Id. at p. 5.

6. The incident was reported to Lieutenant Piper and other staff at Limon Correctional Facility. They ignored the incident. Id.

7. The plaintiff was placed in Cellhouse 3, Pod B. The same individuals approached him and again demanded rent. The plaintiff refused to pay the rent. After several days of this, the plaintiff refused to lock down in the same cell as one of the white supremacists. He received "a write-up" for refusing to follow a direct order even though it would have resulted in substantial harm. Id.

8. The plaintiff was eventually moved to Cellhouse 2, Pod A. While there, a gang member harassed the plaintiff. The harassment was reported to staff and Lieutenant Piper. The plaintiff was informed that the gang member would be moved to a different unit. The gang member was moved to a different unit on three occasions, but was always returned to Cellhouse 2. Id.

9. On October 4, 2008, the plaintiff was severely assaulted by the gang member who had previously harassed him in Cellhouse 2, Pod A. He suffered a broken nose, black eyes, a cut inside his lip, and swollen lips. He "received a write-up for fighting." The Medical Department "did little to help the issues." Id.

10. The plaintiff was moved to segregation for his own protection. Upon release from segregation, he was moved into Cellhouse 1, Pod A. He was there for three hours when he was approached by a gang member who demanded rent. The gang member was "caught red-handed" and moved to segregation. The next day, the plaintiff was moved to segregation for his own protection. Id.

11. The plaintiff was moved to Buena Vista Correction Facility where there is no treatment class for sex offenders. Id.

The Complaint asserts four claims for relief. Claim One alleges that defendants Lander and McCullar violated the plaintiff's First Amendment rights by ordering the mailroom to deny reading materials. Id. at p. 4. Claim Two alleges that defendants Piper and Moore were deliberately indifferent to the plaintiff's safety in violation of his Eighth Amendment rights. Id. at p. 5. Claim Three alleges that defendants DOC, Zavaras, and Brunell have been deliberately indifferent to the plaintiff's safety in violation of the Eighth and Fourteenth Amendments. Id. at pp. 6-6a. Claim Four alleges that defendant Zavaras violated the plaintiff's due process rights.

Id. at p. 6b.[2]  The plaintiff seeks injunctive and declaratory relief and nominal, punitive, and "emotional" damages.  Id. at p. 8.

### III.  ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A.  Eleventh Amendment Immunity

The defendants do not raise Eleventh Amendment immunity.[3]  I must address Eleventh Amendment immunity, however, because it is implicated with respect to the subject matter jurisdiction of this court to determine the plaintiff's claims.  Koerpel v. Heckler, 797 F.2d 858, 861 (10th Cir. 1986) (stating that "[i]nasmuch as federal courts are courts of limited jurisdiction, the court may and, in fact, has an obligation to inquire into its jurisdiction *sua sponte*").  My analysis is a facial challenge to the Complaint's allegations as to subject matter jurisdiction.  Therefore, I accept the allegations of the Complaint as true.  Holt, 46 F.3d at 1003.

---

[2] Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

[3] In addition to his response [Doc. #28] to the defendants' Motion, the plaintiff has filed a paper wherein he states that he objects to the defendants' Eleventh Amendment immunity argument [Doc. #29].  However, the defendants' Motion does not present an argument based on Eleventh Amendment Immunity.

6

The Eleventh Amendment bars suits in federal courts against unconsenting states by the state's own citizens and by citizens of another state. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted). Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983. Quern v. Jordan, 440 U.S. 332, 345 (1979).

The Eleventh Amendment precludes federal jurisdiction in suits against a state or state agency either for money damages or for injunctive relief. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984); Ellis v. University of Kansas Medical Center, 163 F.3d 1186, 1196 (10th Cir. 1999). The plaintiff names the DOC as a defendant. The DOC is an agency of the state. Accordingly, the plaintiff's claims against the DOC are barred by Eleventh Amendment immunity.

The Eleventh Amendment also precludes federal jurisdiction over state officials acting in their official capacities as to retroactive monetary relief, but not as to prospective injunctive relief. Pennhurst, 465 U.S. at 102-03,105-06. The individual defendants are employed by the DOC. *Complaint*, pp. 2-2a. Consequently, the Eleventh Amendment bars suit against them in their official capacities for retroactive monetary relief.

I respectfully RECOMMEND dismissal of all claims against the DOC and dismissal of claims against the defendants in their official capacities for retroactive monetary relief based on Eleventh Amendment immunity.

## B. Qualified Immunity

The defendants assert that they are entitled to qualified immunity. *Motion*, pp. 12-15. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages where their conduct, when committed, did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors. I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right. In addition, I must inquire whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).[4]

### 1. Claim One

Claim One alleges that defendants Lander and McCullar violated the plaintiff's First Amendment rights by ordering the mailroom to deny his reading materials. *Complaint*, p. 4.

A prison official's regulation of access to publications is valid if it is reasonably related to legitimate penological interests. Thornburgh v. Abbott, 490 U.S. 401, 413 (1989). The court must consider and balance the following factors in making this determination: (1) "whether there

---

[4]The order in which I may consider these factors is discretionary. Pearson v. Callahan, __ U.S. __, __, 129 S. Ct. 808, 818 (2009); Manzanares v. Higdon, 2009 WL 2430643 *3 n.6 (10th Cir. Aug. 10, 2009).

is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right would have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether ready alternatives exist.  Turner v. Safley, 482 U.S. 78, 90 (1987) (internal quotations omitted).

The defendants assert that Claim One must be dismissed because "[c]ourts throughout the country routinely hold that prison officials may ban sexually-explicit material." *Motion*, pp. 4-5. Although the defendants cite many cases in support of their argument, they cite only one Tenth Circuit case, Jones v. Salt Lake County, 503 F.3d 1147 (10th Cir. 2007).  Id.  Jones was decided on summary judgment after a proper Turner analysis was performed on the undisputed and unique facts of the case.[5]

In ruling on a motion to dismiss, I am merely determining whether the plaintiff has stated a claim upon which relief can be granted.  Interpreting the Complaint's allegations liberally and assuming the allegations of the Complaint to be true, as I must, the plaintiff has stated a plausible claim for relief.  Moreover, the plaintiff's First Amendment rights were clearly established prior to the alleged deprivation.  Thornburgh, 490 U.S. 401.  Therefore, the defendants are not entitled to qualified immunity.  The Motion should be denied insofar as it seeks dismissal of Claim One.

### 2.  Claim Two

Claim Two alleges that defendants Piper and Moore were deliberately indifferent to the plaintiff's safety in violation of his Eighth Amendment rights. *Complaint*, p. 5.

---

[5] The majority of the cases cited by the defendants were resolved on summary judgment.

The Eighth Amendment places a burden on prison officials to "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). A prison official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A prisoner asserting a claim for failure to protect must establish that the deprivation alleged is sufficiently serious and that the defendant acted with deliberate indifference. Id. Deliberate indifference in this context means that the official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

The plaintiff asserts Claim Two against defendants Piper and Moore.[6] As to defendant Piper, the plaintiff alleges that immediately after his transfer to Limon Correctional Facility, he was assaulted and robbed by white supremacist inmates because he refused to pay them rent. He reported the incident to defendant Piper, but Piper ignored the incident. He was placed in a different cellhouse where the same individuals demanded rent. He was eventually moved to a different cellhouse where a gang member harassed him. He reported the harassment to Piper and was informed that the gang member would be moved. Although the gang member was moved on three separate occasions, he was always returned to the plaintiff's cellhouse. This gang member eventually assaulted the plaintiff. The plaintiff was then moved to a different facility.

---

[6]The plaintiff also states that defendant Zavaras transferred him to Limon Correctional Facility. The plaintiff's allegations against Zavaras are addressed in my analysis of Claim Three.

These allegations are not sufficient to state a plausible claim that Piper knew of and disregarded a substantial risk of serious harm to the plaintiff. Although the plaintiff alleges that Piper ignored the first incident, there are no factual allegations from which to infer that Piper deliberately placed the plaintiff in harm's way after that incident.

The plaintiff's allegations against Moore consist of the following paragraph:

> The plaintiff was informed that Jim Moore at Offender Services was in charge of placement within [the] Colorado Department of Corrections. The plaintiff contacted Jim Moore at Offender Services and explained the dangerous situation the Plaintiff was in when the Plaintiff arrived at Limon Correctional Facility. Mr. Moore refused to take any action or respond. This resulted in the Plaintiff's being assaulted/robbed/extorted by gang members. This violated the Plaintiff's Eighth Amendment right to protect inmates from assault.

*Complaint*, p. 5.

These allegations are vague and conclusory and, therefore, are not sufficient to state a plausible claim for deliberate indifference as against Moore. The Motion should be granted insofar as it seeks dismissal of Claim Two.

### 3.  Claim Three

Claim Three alleges that defendants Zavaras and Brunell were deliberately indifferent to the plaintiff's safety. *Complaint*, pp. 6-6a. The plaintiff asserts Claim Three under both the Eighth Amendment and the Fourteenth Amendment. However, the claim raises issues solely related to his conditions of confinement and is appropriately analyzed as an Eighth Amendment claim rather than a due process claim. Berry v. City of Muskogee, 900 F.2d 1489, 1493-94 (10th Cir. 1990).

The plaintiff alleges that Zavaras had knowledge of long-standing, pervasive, well-documented, and escalating extortions, assaults, and murders committed throughout the DOC against sex offenders by gang members, predominantly white supremacists; Zavaras has been made aware of the problem through DOC criminal investigations, prisoner and victim incident statements, DOC and private prison employee-witnessed accounts, and inmate informants; the problem is fully documented in DOC files and records; Zavaras has deliberately created policies and practices of placing convicted sex offenders with gang members, even when there are documented custody issues between them, so that there is no reasonable measure of protection and safety for convicted sex offenders; the plaintiff was deliberately subjected to these policies and practices; and Zavaras placed him at Limon Correctional Facility where he was repeatedly threatened and assaulted by gang members.

Construing the Complaint liberally, as I must, the plaintiff alleges that Zavaras had an unwritten policy to place sex offenders with gang members; that he ordered the plaintiff to be placed with gang members at Limon Correctional Facility; and that the placement had the foreseeable consequence that the plaintiff would be subjected to coercion, extortion, and physical violence. These allegations are sufficient to state a plausible claim against Zavaras for deliberate indifference to the plaintiff's safety in violation of the Eighth Amendment.

An inmate's right to be free from a prison official's deliberate indifference to safety was clearly established in Farmer v. Brennan, 511 U.S. 825, 842-43 (1994) (stating that "if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information

concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk"). Therefore, Zavaras is not entitled to qualified immunity for this claim. The Motion should be denied insofar as it seeks dismissal of Claim Three against Zavaras.

As to defendant Brunell, an individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official. Id.

The plaintiff's sole allegation against defendant Brunell is that in response to the plaintiff's Step 2 grievance, Brunell "claimed that the Plaintiff's claim of being a high risk offender based on the Plaintiff's offense, are self-inflicted." *Complaint*, p. 6a. The Complaint does not contain any allegations from which it can be inferred that Brunell had direct responsibility for the plaintiff's placement with gang members. Accordingly, the Motion should be granted insofar as it seeks dismissal of Claim Three as against defendant Brunell.

### 4. Claim Four

Claim Four alleges that the plaintiff's due process rights are being violated because he is serving three indeterminate sentences of twenty years to life; he is required to undergo sex

offender treatment in order to be eligible for release on parole; and he is not being housed in a facility where the treatment is available. *Complaint*, p. 6b.

The Due Process Clause of the Fourteenth Amendment guarantees due process only when a person is to be deprived of life, liberty, or property. U.S. Const. amend. XIV, § 1. The Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'" Harper v. Young, 64 F.3d 563, 564 (10th Cir. 1995), aff'd, 520 U.S. 143 (1997). Generally, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979); see also Lustgarden v. Gunter, 966 F.2d 552, 555 (10th Cir. 1992) (stating that "[p]arole is a privilege; there is no constitutional or inherent right to parole."). However, a state may provide a statutory liberty interest through the use of mandatory language in its parole statute, which limits the parole board's discretion or creates a presumption of release. See id. (interpreting Nebraska statute to mandate parole unless one of several enumerated conditions applied); Board of Pardons v. Allen, 482 U.S. 369 (1987) (similarly interpreting Montana statute to create a liberty interest in parole).

The plaintiff does not have a liberty interest in eligibility for parole. The Colorado supreme court has interpreted its parole statute and determined that the parole board is given the "sole power to grant or refuse to grant parole." See Colo. Rev. Stat. § 17-2-201(5)(a); Martinez v. Furlong, 893 P.2d 130, 131 (Colo. 1995) (*en banc*). Therefore, "the Colorado statutory scheme does not create a constitutionally protected entitlement to, or liberty interest in, parole." Thompson v. Riveland, 714 P.2d 1338, 1340 (Colo. App. 1986) (citation omitted ). Under a

discretionary parole scheme, like Colorado's, an inmate is not entitled to due process protections in connection with parole decisions. Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).

The plaintiff is serving an indeterminate sentence of 20 years to life. Therefore, Claim Four can also be interpreted as an attempt to shorten the duration of his confinement through release on parole. Where a plaintiff attacks the fact or duration of his confinement and seeks the remedy of shortened confinement or immediate release, his claims must be asserted in a petition for writ of habeas corpus. McIntosh v. Untied States Parole Commission, 115 F.3d 809, 812 (10th Cir. 1997). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." Preiser v. Rodriquez, 411 U.S. 475, 484 (1973). By contrast, where an action is brought to correct alleged constitutionally defective parole procedures including sex offender classifications, relief is properly sought in a civil rights action. Reed v. McKune, 298 F.3d 946, 954 (10th Cir. 2002); Chambers, 205 F.3d 1237. Insofar as the plaintiff is attempting to shorten the duration of his confinement, the claim is not appropriate in a civil rights action.

To the extent the plaintiff is challenging his eligibility for parole, Claim Four should be dismissed. To the extent he is seeking to shorten the duration of his confinement through release on parole, Claim Four should be denied without prejudice subject to reassertion in a proper habeas petition.

### C. Damages

The defendants assert that the plaintiff's claim for compensatory damages must be dismissed because the plaintiff has failed to allege physical injury as required by the Prisoner Litigation Reform Act ("PLRA"). *Motion*, p. 11. The PLRA provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir 2001) (applying section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion). Although section 1997e(e) bars recovery of compensatory damages for failure to allege physical injury, it does not bar recovery of punitive damages or declaratory or injunctive relief. Id., at 881; Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 808 (10th Cir. 1999).

The plaintiff does not allege a physical injury with respect to Claim One. Therefore, Claim One is barred to the extent it seeks compensatory damages. As to Claim Three, the plaintiff alleges that as a result of the deliberate indifference to his safety, he was assaulted twice. He has sufficiently alleged a physical injury with respect to Claim Three. The Motion should be granted to the extent it seeks dismissal of the plaintiff's claim for compensatory damages as to Claim One and denied as to Claim Three.

The defendants assert that the plaintiff's request for punitive damages must be dismissed because the Complaint does not contain sufficient allegations to demonstrate the requisite state of mind. *Motion*, p. 11. I decline to determine the issue on a motion to dismiss. The Motion should be denied as premature to the extent it seeks dismissal of the plaintiff's claim for punitive damages.

## IV.  CONCLUSION

I respectfully RECOMMEND that Defendants' Motion to Dismiss be GRANTED IN PART and DENIED IN PART as follows:

1.  DENIED insofar as it seeks dismissal of Claim One;

2.  GRANTED insofar as it seeks dismissal of Claim Two;

3.  DENIED insofar as it seeks dismissal of Claim Three as against Zavaras;

4.  GRANTED to the extent it seeks dismissal of Claim Three as against Brunell;

5.  GRANTED to the extent it seeks dismissal of the plaintiff's claim for compensatory damages as to Claim One;

6.  DENIED insofar as it seeks dismissal of the plaintiff's claim for compensatory damages as to Claim Three; and

7.  DENIED AS PREMATURE as to the defendants' request to dismiss the claim for punitive damages.

I further RECOMMEND that Claim Four be DISMISSED to the extent the plaintiff is challenging his eligibility for parole and that Claim Four be DISMISSED WITHOUT PREJUDICE to the extent the plaintiff is seeking to shorten the duration of his confinement through release on parole.

I further RECOMMEND that all claims against the DOC be DISMISSED and the claims against the defendants in their official capacities for retroactive monetary relief be DISMISSED based on Eleventh Amendment immunity.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and

file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. <u>In re Key Energy Resources Inc.</u>, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. <u>United States v. One Parcel of Real Property</u>, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated December 2, 2009.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge