IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-00266-REB-BNB

GLENN DAVIS,

Plaintiff,

v.

ARISTEDES ZAVARAS, Director CDOC,
JAMES LANDER, CDOC Mental Health Employee, Canon City, CO, and
BURL MCCULLAR, SOTMP Program Manager, CDOC Mental Health Employee, Canon City, CO,

Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter arises on **Defendants' Motion for Summary Judgment** [Doc. #61, filed 07/29/2010] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed.R.Civ.P., provides that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial.  Celotex, 447 U.S. at 324.  Only admissible evidence may be considered when ruling on a motion for summary judgment.  World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

The defendants assert that they are entitled to qualified immunity.  *Motion*, pp. 16-18. Qualified immunity shields government officials from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity not only shields a defendant from unwarranted liability, it also protects the defendant from the burdens of defending a suit.  Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  The qualified immunity defense is available only to government officials

sued in their individual capacities.  <u>Buchwald v. University of New Mexico School of Medicine</u>, 159 F.3d 487, 492 (10th Cir. 1998).

When a defendant asserts a qualified immunity defense on summary judgment, a heavy two-part burden shifts to the plaintiff.  <u>Medina</u>, 252 F.3d at 1128.  The plaintiff must establish that "the defendant's actions violated a constitutional or statutory right."  <u>Scull v. New Mexico</u>, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotations and citations omitted).  The plaintiff must also show "that the constitutional or statutory right the defendant allegedly violated was clearly established at the time of the conduct at issue."[1]  <u>Id.</u>  "A right is clearly established only if there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains.  Only if the plaintiff establishes both elements of the test does the defendant bear the traditional burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law."  <u>Id.</u>  "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."  <u>Medina</u>, 252 F.3d at 1128.

## II.  BACKGROUND

The plaintiff is currently incarcerated by the Colorado Department of Corrections ("DOC") at the Colorado Territorial Correctional Facility.  He filed his Amended Prisoner Complaint on February 23, 2009 [Doc. #6] (the "Complaint").  The Complaint asserts four claims for relief.  Claims Two and Four have been dismissed entirely [Doc. #45].  Claim One alleges that defendants Lander and McCullar violated the plaintiff's First Amendment right to

---

[1]The order in which I may consider these factors is discretionary.  <u>Pearson v. Callahan</u>, __ U.S. __, __, 129 S. Ct. 808, 818 (2009); <u>Shroff v. Spellman</u>, 604 F.3d 1179, 1188 (10th Cir. 2010).

freedom of speech by ordering the mailroom to deny reading materials.[2] *Complaint*, p. 4.[3]

Claim Three alleges that defendant Zavaras has been deliberately indifferent to the plaintiff's

safety in violation of the Eighth Amendment.[4] Id. at pp. 6-6a.  The plaintiff seeks injunctive and

declaratory relief and nominal, punitive, and "emotional" damages.  Id. at p. 8.

## III.   UNDISPUTED MATERIAL FACTS

1.   The plaintiff is currently serving sentences for convictions on multiple counts of

Sexual Assault on a Child; Sexual Assault on a Child, Position of Trust; Sexual Assault on a

Child, Position of Trust--Pattern of Abuse; and Sexual Exploitation of a Child.  *Motion*, p. 2, ¶ 2

and Ex. A.

2.   The plaintiff repeatedly sexually assaulted three girls ages 12, 13, and 14.  He

provided the girls with drugs and sexually assaulted them digitally, orally, by penile penetration,

and by using sex devices.  Id. at ¶ 3 and Ex. B.

3.   As a result of these convictions, the plaintiff is administratively classified as a sex

offender, and he is restricted from receiving certain reading materials.  Id. at ¶ 4 and Ex. C.

4.   DOC Administrative Regulation ("AR") 300-26 governs inmate reading material.  Id.

at ¶ 5 and Ex. D.  Pursuant to AR 300-26, it is the policy of the DOC "to respect and respond to

the reading needs and preferences of offenders, consistent with the security needs and good order

---

[2]The plaintiff's response appears to assert additional claims not asserted in the
Complaint.  *Plaintiff's Opposition to Defense's Motion for Summary Judgment* [Doc. #70] (the
"Response"), pp. 2-6.  I will not address claims raised for the first time in a brief opposing a
dispositive motion.

[3]I cite to the pages of the Complaint as they are assigned by the plaintiff.

[4]Claim Three has been dismissed insofar as it alleges a violation of the Fourteenth
Amendment and as against all defendants except Zavaras [Doc. #45].

of DOC's facilities and offices, public safety, and rehabilitative goals set for the offender." Id. at Ex. D, p. 1.

5.   AR 300-26 provides that "[r]eading material shall be permitted, subject to fire, health, safety, and property allowance restrictions, unless such material poses a threat to the security or good order of the facility or office, or is determined to be contrary to public safety or the individualized rehabilitative goals set forth in writing for a specific offender by the DOC." Id. at Ex. D, p. 2.

6.   AR 300-26 restricts certain types of material from offenders and makes specific provisions for offenders, like the plaintiff, who are identified as sex offenders.  Under AR 300-26, Mental Health staff or Sex Offender Treatment Program staff may, for rehabilitation purposes, set more stringent individualized standards in writing for a specific offender regardless of the offender's participation in the Sex Offender Treatment and Monitoring Program ("SOTMP") or other mental health program.  Id. at p. 3, ¶ 7; Ex. D, p. 3; and Ex. C.

7.   The following are materials that are generally deemed contrary to rehabilitative interests and goals for sex offenders:

> 1. Sexually explicit material as defined by AR 300-26.
>
> 2. Pornographic material: Materials that show unclothed genitals, buttocks or female breasts.
>
> 3. Material that has significant risk of escalating the sex offender's deviant sexual arousal or their cycle of abuse-for example pictures of scantily clothed individuals who are depicted being humiliated, subject to an act of violence, being restrained, objectified, being otherwise degraded, or pictures of the offender's victim.
>
> 4. Material that depicts or by way of description promotes criminal sexual behavior.

> 5. Pictures related directly to a potential victim pool of the individual offender, such as collections of pictures of children by pedophiles.

Id. at Ex. C.

8.   More stringent standards have been set forth for the plaintiff.  These standards restrict him from having in his possession the following materials that have been determined to be contrary to his rehabilitation interests and goals:

> 1. Mr. Davis should not have sexually explicit material containing images or descriptions of masturbation, discharge of bodily fluids, oral sex, sadism, pedophilia, penetration, and/or sexual intercourse.

> 2. Davis should not have material containing images or descriptions of unclothed, transparent, and/or partially clothed individuals revealing genitals, buttocks and/or breasts of females.

> 3. Material with a risk of escalating Mr. Davis deviant sexual arousal or cycle containing images or descriptions of pre-adolescent / adolescent females partially or fully clothed should not be allowed.

> 4. Davis should not be allowed material containing images or describing pre-adolescent, adolescent, or adult females that promotes or portrays females being objectified, depicted as victims, humiliated, and/or restrained.  Material that is intended for pre-adolescents / adolescents should not be allowed.

> 5. Mr. Davis identified victim pool is that of pre-adolescents / adolescent females and young adult females.  He should not be allowed to see any material containing images or descriptions of females that are pre-adolescents / adolescent or young adult females, appear to be pre-adolescents / adolescents or young adult females, portrayed as being pre-adolescents / adolescents or young adult females, and/or as having qualities similar to that of pre-adolescents / adolescents or young adult females.  He should not be allowed any material from or about his victims, or that appears to be from or about his victims.

> 6. Mr. Davis identified victims are \*\*\*, \*\*\*, and \*\*\*.  Mr. Davis is not to have contact with his victims which includes but is not limited to letters, notes, photographs and cards.

Id. at ¶ 8 and Ex. C.

9.   Certain publications have been withheld from the plaintiff based on these criteria.  Id. at ¶ 9; *Complaint*, p. 4.

10.   Pursuant to AR 300-26, reading materials are reviewed by mailroom staff.  If the materials are questionable, they are sent to a facility review committee for review.  The facility review committee consists of at least one representative from each of the following areas: the mental health department, Custody/Control, the general library, and the intelligence office.  Id. at p. 4, ¶ 10 and Ex. D, p. 2.

11.   The review committee determines whether the material is detrimental to security, good order, public safety, or individualized rehabilitative goals.  Id. at ¶ 11 and Ex. D, p. 3.

12.   If the materials are determined to be objectionable, the committee chairperson forwards the Offender Reading Material Evaluation and Appeal Form and the original objectionable material to the administrative head within five working days of the review.  The recommendation to censor reading materials indicates which of the criteria are violated by the materials and describes specifically how the materials violate the criteria.  Id. at ¶ 12 and Ex. D, p. 4.

13.   If four or fewer pages contain censored material, the item may be allowed with the censored pages removed.  If five or more pages contain censored reading material, the item is excluded in its entirety.  Id. at ¶ 13 and Ex. D, p. 4.

14.   Following evaluation of reading material, the administrative head (or the immediate subordinate) determines whether to permit or censor the reading material in full or in part, and indicates the decision in the space provided on the Offender Reading Material Evaluation and Appeal Form.  The administrative head ensures that the decision is served on the offender within 12 working days of receipt of the reading material and recommendation from the facility committee.  Id. at 14, Ex. D, p. 5.

15.   An offender may appeal a decision to censor reading material to a DOC Central Reading Committee at DOC headquarters by submitting a properly completed Offender Reading Material Evaluation and Appeal Form - Part 2.  This is the only administrative remedy available to the offender.  Committee decisions may not be grieved under the DOC's grievance procedure. Id. at p. 5, ¶ 15 and Ex. D, p. 5.

16.   The plaintiff did not appeal all of the facility reading material decisions to the Central Reading Committee.  Id. at ¶ 15; *Response*, p. 5.

## IV.  ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

## A.  Claim One

Claim One alleges that defendants Lander and McCullar violated the plaintiff's First Amendment rights by ordering the mail room staff to deny his reading materials.  *Complaint*, p.

4.  Specifically, the plaintiff states that the defendants denied him his subscriptions to "Playboy Magazine, Maxim Magazine; Books titled: Real Girls, Fresh Girls, Clean Cartoonist Dirty Drawings; Catalogs from NBM Books, The Picture Pimp; and more," and that the "restriction upon the Plaintiff's reading materials by Mental Health, violates the Plaintiff's First Amendment rights."  *Complaint*, p. 4.

A prison official's regulation of access to publications is valid if it is reasonably related to legitimate penological interests.  Thornburgh v. Abbott, 490 U.S. 401, 413 (1989).  The court must consider and balance the following factors in making this determination: (1) "whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right would have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether ready alternatives exist.  Turner v. Safley, 482 U.S. 78, 90 (1987) (internal quotations omitted).

The first Turner factor is "whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it."  The plaintiff is prohibited from possessing sexually oriented materials because he is a sex offender and possession of those materials would be contrary to the individualized rehabilitative goals established for him.  The form which restricts the plaintiff's reading materials explains the rationale for the restriction:

> Research has shown that although pornography does not cause
> people to become sex offenders, it can exacerbate existing
> problems for sex offenders and can increase their potential for

9

acting out, either sexually or violently; therefore, pornography is contrary to rehabilitative goals.

The above named offender is not allowed to have in his/her possession the following specific types of materials as they have been determined to be contrary to their rehabilitation interests and goals:

Mr. Davis is convicted of Sexual Assault on a Child in a Position of Trust. He is serving a 15-Life sentence. Also convicted of Sexual Assault on a Child and he is serving a 10-Life sentence for this crime. He is also serving 18 months for Wrongs to a Child. (misd). Mr. Davis is convicted of sexually assaulting three girls ages 12, 13, and 14. He sexually assaulted them digitally, orally, penile penetration and by using sex devices. A computer was confiscated as well as sex toys and torn out ads with children's pictures. He also introduced the girls to marijuana.

Offender Davis should not be allowed to view material that has a risk of escalating his deviant sexual arousal or his cycle of sexual abuse. Such material is detrimental to his treatment and his ability to effectively control his sexually deviant behavior.

*Motion*, Ex. C, p. 1.

It is undisputed that the plaintiff was convicted of multiple counts of Sexual Assault on a Child; Sexual Assault on a Child, Position of Trust; Sexual Assault on a Child, Position of Trust--Pattern of Abuse; and Sexual Exploitation of a Child. Moreover, rehabilitation of inmates is a "paramount objective of the corrections system." Pell v. Procunier, 417 U.S. 817, 823 (1974).

The plaintiff does not provide any competent evidence to show that there is no valid connection between his restrictions and his rehabilitation. He simply makes unsupported and conclusory allegations that he is not being rehabilitated and that sex offenders "have the lowest recidivism rate of all offenders" and repeat sex offenses are "almost not-existent." *Response*, p. 5. On the record before me, the first Turner factor weighs heavily in favor of the defendants.

As to the second <u>Turner</u> factor, "the right in question must be viewed sensibly and expansively." <u>Thornburgh</u>, 490 U.S. 417 (internal quotations and citation omitted). Although the plaintiff is restricted from receiving sexually oriented materials; materials related to pre-adolescents, adolescents, and adult females; and material from or about his victims, the record does not contain any evidence that the plaintiff is restricted from receiving magazines and other materials that are not in these categories. To the contrary, the same regulation that restricts the plaintiff from receiving these materials permits a broad range of publications to be sent, received, and read, so long as the publications and reading materials are not contrary to security, public safety, or the individual rehabilitation goals of an inmate. Thus, the second <u>Turner</u> factor weighs in favor of the defendants.

The plaintiff has not provided any evidence to show that the third <u>Turner</u> factor weighs in his favor (that removal of the restriction will have a minimal impact on others), nor has he demonstrated any obvious, easy alternatives to the restrictions as outlined by the fourth <u>Turner</u> factor.

The plaintiff has failed to meet his burden to show that the defendants have violated his First Amendment rights by restricting his access to certain publications. Therefore, the defendants are entitled to qualified immunity on Claim One. <u>Scull</u>, 236 F.3d 588, 595. Nor has he provided any evidence to create a material fact dispute regarding whether the defendants' restriction of certain reading materials violates his First Amendment rights. Therefore, judgment should enter in favor of defendants Lander and McCullar in both their individual and official capacities.

The plaintiff argues that the defendants have censored "normal, adult reading materials" that "are <u>not in any way</u> pornographic in nature," including Science Illustrated, CMA Magazine, National Geographic, Prison Legal News, and "even personal letters & photos from a little old church lady penpal." *Response* pp. 1, 6 (emphasis in original). The plaintiff attaches numerous copies of rejection notices and appeal forms to his Response.

As a preliminary matter, the defendants assert--and the plaintiff admits--that the plaintiff did not appeal all of the committee decisions to the Central Reading Committee. *Motion*, p. 5, ¶ 15; *Response*, p. 5. Because the plaintiff's claims challenge prison conditions, they are governed by the Prison Litigation Reform Act (the "PLRA"). 42 U.S.C. § 1997e(a). The PLRA provides:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

<u>Id.</u> The Supreme Court has interpreted section 1997e(a) to require, prior to filing a lawsuit, that the inmate exhaust all available administrative remedies whether the inmate is seeking injunctive relief, monetary damages, or both. <u>Booth v. Churner</u>, 532 U.S. 731 (2001).

The plaintiff argues it would be futile to exhaust his remedies "because there is little chance of winning an appeal with little more than 1" of paper to write out and state ones case. And none of the appeals ever came back with so much as a comment on the substance of the appeal itself." *Response*, p. 5. The Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." <u>Booth</u>, 532 U.S. at 741 n.6. Accordingly, I do not address the plaintiff's challenges to committee decisions that were not properly appealed.

The plaintiff provides evidence that he exhausted his administrative remedies as to rejections of the following publications:[5]

(1)   Maxim, August 2008, *Response* [Doc. 70-1], p. 12;[6]

(2)   The Picture Pimp [Doc. #70-1], p. 20;

(3)   NBM Spring Catalog [Doc. #70-1], p. 22;

(4)   Fantasy World; Manga Woman [Doc. # 70-1], pp. 28-29;

(5)   Maxim, July 2008 [Doc. #70-1], pp. 33-34;

(6)   Playboy, July 2008 [Doc. #70-2], pp. 5-6;

(7)   Playboy August 2008 [Doc. #70-3], p. 2;

(8)   National Geographic, July 2009 [Doc. #70-3], pp. 49-50;

(8)   Garden State Periodicals, Spring 2009 [Doc. #70-3], pp. 53-56, 59; and

(9)   National Geographic, September 2009 [Doc. #70-3], pp. 57-58.

These publications were rejected in whole or in part because they contained materials within the plaintiff's restrictions.  Id.  The plaintiff does not provide any competent evidence or

---

[5]The appeal form has two parts.  Part I contains the review committee's findings and the following notice:

> Pursuant to AR 300-26, the offender may appeal this decision within 10 days of the date of service of this form.  This appeal is the only available administrative remedy to the offender.  Offender Reading Committee decisions may not be grieved under the provisions of DOC AR 850-04, *Grievance Procedure.*

Part II is the portion that the inmate completes and submits to the Central Reading Committee as his appeal.

[6]I cite to the page numbers of the plaintiff's exhibits as they are assigned by the court's docketing system.

argument that the materials were not within his restrictions.  Instead, he summarily argues that the magazines "can hardly be called pornographic in nature" and that many of the publications were rejected because they contained pictures of "scantilly [sic] clad women," but his restrictions allow rejection only of material that depicts scantily clad women who are depicted as being humiliated, restrained, or otherwise degraded.  *Response*, p. 1.

The plaintiff understates his restrictions.  He is not just restricted from "pornographic" material or material containing scantily clad women who are depicted as being humiliated, restrained, or otherwise degraded.  Rather, he is not "allowed to see *any* material containing images or descriptions of females that are pre-adolescents / adolescent or young adult females, appear to be pre-adolescents / adolescents or young adult females, portrayed as being pre-adolescents / adolescents or young adult females, and/or as having qualities similar to that of pre-adolescents / adolescents or young adult females."  *Motion*, Ex. C, p. 2 (emphasis added).

The plaintiff also complains that the rejection process is flawed because it is subjective: "[w]hat one person sees as a bathing suit, someone else sees as scantilly [sic] clad."  *Response*, p. 1.  This argument was addressed in Frazier v. Ortiz, No. 07-cv-02131-CMA-KMT, 2010 WL 924254 (D. Colo. March 10, 2010):

> Guided by these rules, Defendants admittedly confiscated several of Plaintiff's magazines.  Doing so inherently involves the use of their discretion, a point Plaintiff finds troublesome.  However, the Court is in no position to second-guess the professional judgment of prison officials, provided their means (regulations) are "reasonably related" to their objective (rehabilitation).  See Turner v. Safley, 482 U.S. 78 (1987).  That rule is an outgrowth of the principle that judgments regarding offender rehabilitation, like prison security, "are peculiarly within the province and professional expertise of corrections officials."  Id. at 86. (citing Pell v. Procunier, 417 U.S. 817, 827 (1974)).  Accordingly, "in the absence of substantial evidence in the record to indicate that the

14

officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Id. (citation omitted).

Id. at *5.

The plaintiff has not provided any evidence to create a material fact dispute regarding whether the rejected material fell within the plaintiff's restrictions. Summary judgment should enter in favor of the defendants on Claim One.

## B.  Claim Three

Claim Three alleges that defendant Zavaras was deliberately indifferent to the plaintiff's safety in violation of the Eighth Amendment. *Complaint*, pp. 6-6a. Specifically, the plaintiff alleges that Zavaras had knowledge of long-standing, pervasive, well-documented, and escalating extortions, assaults, and murders committed throughout the DOC against sex offenders by gang members, predominantly white supremacists; Zavaras has been made aware of the problem through DOC criminal investigations, prisoner and victim incident statements, DOC and private prison employee-witnessed accounts, and inmate informants; the problem is fully documented in DOC files and records; Zavaras has deliberately created policies and practices of placing convicted sex offenders with gang members, even when there are documented custody issues between them, so that there is no reasonable measure of protection and safety for convicted sex offenders; the plaintiff was deliberately subjected to these policies and practices; and Zavaras placed him at Limon Correctional Facility where he was repeatedly threatened and assaulted by gang members.

I have construed Claim Three to allege that Zavaras had an unwritten policy to place sex offenders with gang members; that he ordered the plaintiff to be placed with gang members at

Limon Correctional Facility; and that the placement had the foreseeable consequence that the plaintiff would be subjected to coercion, extortion, and physical violence [Doc. #34].

The Eighth Amendment places a burden on prison officials to "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). A prison official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A prisoner asserting a claim for failure to protect must establish that the deprivation alleged is sufficiently serious and that the defendant acted with deliberate indifference. Id.

To satisfy the first prong of the Farmer test, "[a] prisoner must demonstrate that the deprivation was sufficiently serious and that a prison official's act or omission resulted in the denial of the minimal civilized measure of life's necessities." Grimsley v. MacKay, 93 F.3d 676, 681 (10th Cir. 1996). "This is an objective standard. Such conditions have been found to exist where prison officials disregard repeated warnings of danger to a particular prisoner and continually refuse to make the situation safer, for example by . . . separating the prisoner from other inmates who previously have attacked him on multiple occasions." Id. Deliberate indifference means that the official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

An individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th

Cir. 1983).  Respondeat superior is not within the purview of section 1983 liability.  Id.  In order

for a supervisor to be liable under section 1983, there must exist a causal connection or an

affirmative link "between the constitutional deprivation and either the supervisor's personal

participation, his exercise of control or direction, or his failure to supervise." Butler v. City of

Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371

(1976).  However, "if an Eighth Amendment plaintiff presents evidence showing that a

substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly

noted by prison officials in the past, and the circumstances suggest that the defendant-official

being sued had been exposed to information concerning the risk and thus must have known about

it, then such evidence could be sufficient to permit a trier of fact to find that the

defendant-official had actual knowledge of the risk" Farmer v. Brennan, 511 U.S. 825, 842-43

(1994).

The plaintiff does not provide any evidence to show that Zavaras was deliberately

indifferent to the need to protect the plaintiff from a substantial risk of serious harm from other

inmates.  The plaintiff states only that he sent Zavaras a "Letter of Intent" which clearly

informed him of "the retaliation of shipping the Plaintiff out of Fremont Correctional Facility."

*Response*, p. 6.  The plaintiff attaches to his Response a "rough draft" of the "actual letter" that

he sent to Zavaras.  A "rough draft" does not constitute evidence of an actual letter sent to

Zavaras.  Even if the rough draft were competent evidence, it shows only that on May 7, 2008,

the plaintiff stated in a letter to Zavaras that the Fremont Correctional Facility is the only safe

facility for sex offenders and that "Limon, Sterling, Buena Vista, A.V.C.F., and Ft. Lyons are the

MOST DANGEROUS Facilities within CDOC for Sex Offenders."  Id. at Ex. B (emphasis in

original).  The letter does not show that Zavaras had any knowledge of a substantial risk that attacks on sex offenders were longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and that Zavaras had been exposed to information concerning the risk and must have known about it.  Indeed, it appears that the plaintiff is seeking to hold Zavaras liable solely because of his position as Executive Director of the DOC.  *Response*, p. 6 (stating that Zavaras is aware of "what is going on" because he "is in control of the inmates" and he "has the power to transfer inmates") and p. 8 (stating that Zavaras is "the Top Gun" and "the buck stops" at Zavaras).

The plaintiff has not met his burden to show that Zavaras violated his Eighth Amendment rights.  Therefore, Zavaras is entitled to qualified immunity insofar as he is sued in his individual capacity.  Moreover, the plaintiff has failed to provide any evidence to create a material fact dispute regarding whether Zavaras violated his Eighth Amendment rights.  Accordingly, the Motion should be granted insofar as it seeks summary judgment in favor of Zavaras on Claim Three in both his individual and official capacities.

## V.   CONCLUSION

I RECOMMEND that Defendants' Motion for Summary Judgment [Doc. #61] be

GRANTED and that judgment enter in favor of the defendants on the plaintiff's claim against

them.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and

Fed.R.Civ.P. 72(b), the parties have 14 days after service of this recommendation to serve and

file specific, written objections.  A party's failure to serve and file specific, written objections

waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas

v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal

questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A

party's objections to this recommendation must be both timely and specific to preserve an issue

for *de novo* review by the district court or for appellate review.  United States v. One Parcel of

Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated November 10, 2010.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge